UNITED STATES DISTRICT COURT FOR
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 08-60953-CIV-COHN/SELTZER

---

MICHAEL G. PLUNKETT, derivatively on
behalf of SIMPLY FIT HOLDINGS GROUP,
INC.,

    Plaintiff,

    v.

CORT L. POYNER, DANIEL MINAHAN, DP
MINAHAN, INC., SILVERMAN & MINAHAN
BEVERAGE COMPANY, LLC, THE SILVERMAN
& MINAHAN GROUP, LLC, MAZEL TUFF, LLC,
ROBERT L. COX, CARL FELDMAN, SMITTEN
PRESS, LOCAL LORE AND LEGEND, INC.,
and ALTMAN & COMPANY P.C.

    Defendants,

SIMPLY FIT HOLDINGS GROUP, INC.,

    Derivative Plaintiff and
    Nominal Defendant.

---

## MOTION TO DISMISS DERIVATIVE ACTION

### INTRODUCTION

  Defendant Altman & Company P.C., attorneys pro se, hereby moves, pursuant to Fed.R.Civ.P. 23.1, to dismiss Michael Plunkett's first amended complaint (the "Complaint"). This motion is supported by the accompanying declarations of Daniel Minahan and Eric Rosenberg and the exhibits to them.

  The Complaint should be dismissed because Michael Plunkett is not an adequate derivative plaintiff. Mr. Plunkett

is now engaged in a scheme to sell Simply Fit beverages through a pirating operation and/or to misappropriate the entire business of Simply Fit Holdings Group, Inc. ("SF Holdings") for himself and his confederates. He can use, and is using, this lawsuit to pressure defendant Silverman & Minahan Beverage Company, LLC ("SMBC") and its principals to allow him to misappropriate SF Holdings and the Simply Fit beverage formulas and trade marks (the "SF IP"). Because he is engaged in that conduct, his interests materially conflict with those of other SF Holdings shareholders.

## BACKGROUND

### Complaint

Michael Plunkett is an investment banker who has been looking for employment since 2004 and has been involved with SF Holdings since mid-2007. (Rosenberg Dec. Exh. J at pp. 12-13, 63-64) In his first amended verified complaint, Mr. Plunkett alleges that SF Holdings is a Florida corporation that was formed on April 2, 2007 to make and distribute "functional beverages," including beverages marketed under the "Simply Fit" name. (Complaint ¶¶ 8 and 25) Mr. Plunkett alleges that he is the owner of 400,000 shares of SF Holdings stock. (Id. at ¶ 3) According to him, SMBC principals Cort Poyner and Daniel Minahan at all times dominated and controlled SF Holdings. (Id. at ¶¶ 14, 25, 31) However, they were allegedly never shareholders, officers, or directors of SF Holdings. (Id. ¶ 25)

Mr. Plunkett also alleges that American Quality

Beverages ("AQB") originally owned the SF IP.  (Complaint ¶ 26) On June 13, 2007, SMBC "purported" to purchase the SF IP from AQB for $200,000.  (Id. at ¶ 30)  Attached to the complaint as Exhibit G are a written contract between SMBC and AQB providing for AQB's sale to SMBC of the SF IP, and related documents.  Mr. Plunkett acknowledges that Messrs. Poyner and Minahan "may have initially advanced funds to acquire" the SF IP.  (Id. at ¶ 33)  However, he contends that SF Holdings ultimately paid the consideration for that acquisition, as Messrs. Poyner and Minahan intended all along, by reimbursing them for the purchase price.  (Id. at ¶¶ 33)  On June 27, 2007, SMBC entered into a written agreement with SF Holdings pursuant to which it licensed SF Holdings to make and sell Simply Fit beverages through use of the SF IP.  (Complaint ¶ 39 and Exh. L thereto)

      Mr. Plunkett alleges that Messrs. Poyner and Minahan caused SF Holdings to make two promissory notes to Mr. Poyner's company, Mazel Tuff, in the amounts of $1,000,000 and $2,118,304.  (Complaint ¶ 33)  The defendants allegedly justified those promissory notes by claiming that they reflected moneys owed as a result of advances they made for SF Holdings' benefit, including the purchase price of the SF IP from AQB.  (Id. at ¶ 35)  Messrs. Poyner and Minahan are also alleged to have caused SF Holdings to enter into purportedly unfair consulting agreements with Mazel Tuff and with DP Minahan, Inc., an entity controlled by Daniel Minahan.  (¶¶ 42-43)  Additionally, they allegedly caused SF Holdings president Robert Cox to acquire a public "shell"

company, Smitten Press, for $600,000 and claimed that amount as a debt that SF Holdings owed them. (¶¶ 45-47) Smitten Press was acquired so that SF Holdings could merge with it and become a public company. (¶ 45)

Mr. Plunkett alleges that the "defendants" solicited and obtained investments from approximately 42 "unsuspecting investors," including Mr. Plunkett. (Complaint ¶ 57) He fails to disclose that he is the person who sold most of that stock to those investors at a time when he was a consultant to SF Holdings and that he demanded and was paid a ten percent commission on those sales. (Minahan Dec. at ¶¶ 3, 5 and Exh. D; Rosenberg Dec. Exh. J at pp. 32-33, 39, 45-48, 50-51, 136; Exhs. K and L)[1] SF Holdings also raised $3,110,000 from a private offering of debt securities through Rockwell Global Capital ("Rockwell"). (Complaint ¶¶ 70-72) The defendants are alleged to have wrongfully taken "at least $1,444,999.95" of those moneys for themselves. (Id. at ¶ 72-73)

Mr. Plunkett alleges that Steven Altman, the principal of defendant Altman & Company P.C., acted as counsel for SMBC, Cort Poyner, Dan Minahan, and SF Holdings at various times in 2007 and 2008. He specifically alleges that according to a schedule, SF Holdings paid $100,000 to Mr. Altman for legal services he rendered to it. (Complaint at ¶ 145) However, Mr. Plunkett does not allege that any such money was actually ever

---

[1] Mr. Plunkett has denied that he sold securities to those persons.

4

paid to Mr. Altman. He does allege "on information and belief" that in June 2007, Mr. Altman transmitted draft documents relating to AQB's sale of the SF IP to SMBC and that he "is informed" that Mr. Altman "acted as counsel for [SMBC]" in that company's purchase of the SF IP. (Id.) Mr. Plunkett concludes that (again "on information and belief") Mr. Altman represented SMBC in that transaction at the same time he represented and was being paid by SF Holdings. (Id. at ¶ 146) According to him, that transaction between SMBC and AQB was unfair to SF Holdings. (¶ 148)

Mr. Plunkett alleges that SF Holdings paid Messrs. Minahan and Poyner and their entities several times the amount of the purchase price of the SF IP, though he does not indicate what Mr. Altman had to do with those payments. (Complaint at ¶ 148) Mr. Altman also allegedly represented SF Holdings in connection with an employment agreement between it and AQB that was executed at the same time as the agreement for SMBC to acquire the SF IP. (Id. at ¶ 147) He therefore had reason to know that SF Holdings was to pay Mr. Alibrandi's salary.

Steven Altman allegedly prepared a January 29, 2008 amendment to SF Holdings' license agreement that increased SMBC's rights for no consideration at the same time as he represented SF Holdings in litigation. (Complaint at ¶ 151) Further, Mr. Altman represents SMBC in its action against Robert Cox and others, in which action SMBC has pleaded that it is the owner of the SF IP. (Id. at ¶ 152) He also advocates the effectiveness of

SMBC's termination of the license it granted to SF Holdings in that action. (Id.) Mr. Plunkett also alleges that "most unconscionably," Mr. Altman obtained a TRO prohibiting SF Holdings' (former) agents from making or selling Simply Fit beverages (¶ 154).

According to Mr. Plunkett, Mr. Altman billed SF Holdings for reviewing a private placement memorandum ("PPM") in which were disclosed promissory notes and consulting agreements between Mazel Tuff and DP Minahan, on the one hand, and SF Holdings, on the other hand. (Id. ¶ 155) Mr. Altman is alleged in conclusory terms to have caused SF Holdings to enter into those purportedly unfair, "non-arms' length" agreements. (Id.) He allegedly "advocat[es]" for SMBC's termination of SF Holdings' license, apparently by acknowledging that that event did in fact occur. (Id. at ¶ 156)

In consequence of those and Mr. Plunkett's other allegations, Mr. Plunkett asserts twelve claims on behalf of SF Holdings. In his twelfth claim, against Altman & Company PC, Mr. Plunkett purports to allege a cause of action for breach of fiduciary duties.

**Michael Plunkett's Attempts to Take Over SF Holdings' Business**

Mr. Plunkett has recently admitted that, beginning in or about March 2008, he concocted plans to take over SF Holdings by various means. He discussed with Bob Cox, SF Holdings consultant Jim Stellmach, investment banker Dominic Ruggiero, and others the possibility of buying out and operating SF Holdings.

(Rosenberg Dec. Exh. J at pp. 127, 140, 155-59)  Those persons also discussed other means of taking control of the company, including the commencement of this derivative action to force the defendants (other than Bob Cox) to relinquish their interests in it and in the SF IP.  (Id.)  Mr. Plunkett even drafted documents reflecting his various strategies for accomplishing that goal, including the structure of a proposed buyout.  (Id. at Exh. J pp. 154-56, 171-73; Exhs. M and N]

Bob Cox assisted Mr. Plunkett with this lawsuit.  Mr. Plunkett has admitted that he asked Mr. Cox for documents and also asked him to cause SF Holdings to contribute $20,000 toward the legal fees for it.  (Rosenberg Dec. Exh. J at pp. 164-65, 174)  He testified that Mr. Cox participated in and encouraged this action and provided documents and information to him for use in it both before and after the complaint was filed.  (Id. at pp. 164-65, 188-90, 201, 203-04)  Mr. Cox ultimately did not join the lawsuit as a plaintiff, explaining that he would be better off as a defendant in it.  (Id. at 202-03)  However, not only did he still provide documents and information to Mr. Plunkett after commencement of this action but Mr. Plunkett also provided Mr. Cox with copies of papers filed in it and in SMBC's action against both of them and others.  (Rosenberg Dec. Exhs. O and P)

In the spring of 2008, Mr. Plunkett and his confederates planned to depart en masse from SF Holdings' offices and thereafter to sell Simply Fit beverage furtively.  A June 16, 2008 entry in a time line that co-conspirator Bob Thompson wrote

7

states that:

> [SF Holdings officers and employees] Bob Cox, Lester Kuznetz, Bob Thompson, Bruce Schioccetti, and Fred McFarland held meeting at Dunkin Donuts to discuss going dark and the plans that Mike Plunkett, Jim Stellmach, Bob Cox, and Friends and Family shareholders had about legal action to be taken. Bob Cox that we would be dark for a week maybe two and would reopen with the HQ being in the Northeast with an office in South Florida.

Minahan Dec. Exh. F.

Mr. Plunkett and his accomplices put that plan in motion only days later. On or about June 19, 2008, Bob Cox resigned as SF Holdings' president and CEO and he and other SF Holdings officers abandoned that company's offices. (Minahan Dec. ¶ 7; Exh. A at ¶ 15; and Exh. G) Thereafter, SMBC obtained electronic mail messages written by Mr. Cox, Michael Plunkett, and other former SF Holdings officers indicating that they were surreptitiously attempting to make and sell Simply Fit beverages. (Minahan Dec. ¶¶ 7-10 and Exhs. F (June 16 entry), H, And I; Exh. A at ¶¶ 19-24) In the face of that evidence, Mr. Plunkett nonetheless insists that he did not plan to make or sell Simply Fit beverage after the resignations and abandonment of SF Holdings' offices. (Rosenberg Dec. Exh. J at 186-87) He also testified that he did not attempt to make or sell any Simply Fit beverage after he received Daniel Minahan's June 25 or 26, 2008 cease and desist letter. (Id. at 224-28; Rosenberg Dec. Exh. Q: cease and desist letters)[2] However, SMBC obtained

---

[2] The cease and desist letters (Rosenberg Exh. Q) were annexed as Exhibit U to the July 7, 2008 declaration of Daniel Minahan that is in turn attached to the Minahan Dec. as Exhibit

8

communications proving the contrary.[3] For example, on June 24, 2008, Mr. Thompson wrote Messrs. Plunkett and Cox as follows:

> Guys, has anyone spoken with Tim Kezman [officer of King Juice, SF Holdings' bottler] about the production scheduled for next week? Can we arrange for him to send out a couple of sample to test since the filtration system is no longer in place? There are two outstanding payments due: [SF Holdings customer] Healthy Image for 11K+, and Garal for balance of previous invoice. Healthy Image will hold onto the check until we notify him where to send it to. Larry Alibrandi still has those 6 pallet that need to be shipped to Nutri Sport and he pays upon delivery. Lastly, if you have a copy of the documents being served [in this derivative action] I would like the opportunity to read or let me know when they are posted online. Thanks.
>
> Bob Thompson

Minahan Dec. Exh. H. Several subsequent messages that the defendants herein discovered, and which are included in the exhibits to the accompanying declarations, are to the same effect.

## ARGUMENT

> In bringing a derivative action, the shareholder usurps the role of the normal corporate decision maker - the board of directors. Because the shareholder nominates himself for the right to speak for the corporation, the shareholder derivative procedure set forth in Fed.R.Civ.P. 23.1 has safeguards to assure that the proceeding is truly in the best interest of the owner of the cause of action - the corporation.

Pacemaker Plastics Co., Inc. v. AFM Corp., 139 F. Supp.2d 851,

---

A.

[3] See, in addition to Minahan Dec. Exhs. F (June 16 entry), H, and I, Rosenberg Dec. Exhs. R through V; Rosenberg Exh. J at 240-42 (referring to Exh. T).

9

855 (N.D. Oh. 2001).

> Pursuant to Red.R.Civ.P. 23.1, a plaintiff bringing a derivative shareholder action "must be qualified to serve in a fiduciary capacity as a representative of the class of stockholders, whose interest is dependent upon the representative's adequate and fair prosecution of the action." Emerald Partners v. Berlin, 564 A.2d 670, 673 (Del. Ch. 1989); see also Fed.R.Civ.P. 23.1 ("The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation"). . . . Where "economic antagonism" exists between a potential plaintiff and other shareholders, courts have disqualified derivative plaintiffs, finding their interests conflict with the interests of similarly situated shareholders. See Pacemaker Plastics Co. v. AFM Corp., 139 F. Supp.2d 851, 855-56 (N.D. Ohio 2001) (disqualifying as derivative representatives plaintiffs who would benefit in the form of increased ownership of a corporation if derivative suit succeeded); Torchmark Corp. v. Bixby, 708 F. Supp. 1070, 1077-78 (W.D. Mo. 1988) . . . See also Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1833 (2nd ed. 1986) ("Perhaps the most important element to be considered is whether plaintiff's interests are antagonistic to those he is seeking to represent.").

Bender v. Parks, 2004 WL 3737124 at * 3 (D.D.C. 2004). See also Adiel v. Electronic Financial Systems, Inc., 513 So.2d 1347 (Fla. App. 3 Dist. 1987) (plaintiff's attempts to cajole directors into merger disqualify him).

Michael Plunkett should be disqualified as a derivative plaintiff and this action dismissed because his interests conflict with those of SF Holdings and other of its securities holders. Notwithstanding the impression he conveys in his complaint, Mr. Plunkett is not a passive shareholder in SF Holdings. Rather he was a consultant to the company who sold SF

Holdings stock to many of its shareholders and was paid a ten percent commission on those sales.[4] His failure to disclose those facts at paragraphs 57 and 58 of the Complaint renders them materially misleading. If, as he claims, materials that were distributed to those shareholders were misleading, then he may also be liable to them for that reason. A failure by him to disclose the commissions he received would likely also constitute a violation of the federal securities laws. See e.g. Mirman v. Berk & Michaels, P.C., 1994 WL 410881 at * 7 (S.D.N.Y. 1994); SEC v. Hasho, 784 F. Supp. 1059, 1110 (S.D.N.Y. 1992).

More importantly, Mr. Plunkett's involvement in a conspiracy with SF Holdings officers to take over SF Holdings' business puts him in direct conflict with SF Holdings and other of its securities holders. While still working for SF Holdings, Mr. Plunkett and his co-conspirators planned to close that company's offices, furtively operate a business to sell Simply Fit beverages, and leave SMBC, SF Holdings' landlord, and its other creditors behind.[5] Part of their plan was to commence

---

[4] Minahan Dec. at ¶¶ 3-5 and Exhs. D and E; Rosenberg Dec. Exh. J at pp. 32-33, 39, 45-48, 136 and Exhs. K and L. Because Mr. Plunkett was not a registered securities broker, his sales likely also violated Securities Exchange Act § 15(a), 15 U.S.C. § 78(o). See e.g. Greenway Environmental Services, Inc., 1997 WL 244977 (May 14, 1997) (person who "sold Greenway debentures to retail investors from Greenway's offices for four months in mid-1992 without being registered with the Commission as a broker or dealer" charged with § 15(a) violation and consents to injunction).

[5] Minahan Dec. ¶¶ 7-12 and Exh. A at ¶¶ 19-26; Minahan Exh. F at June 16 entry; Rosenberg Dec. Exh. J at 127, 140, 154-59, 171-73 and Exhs. M and N.

11

this lawsuit against Messrs. Poyner and Minahan and also Mr. Cox himself.[6] They in fact did those things. Messrs. Cox and Kuznetz formally resigned from SF Holdings; the other conspirator-employees disappeared from SF Holdings' offices; and they and Mr. Plunkett attempted to make and sell Simply Fit beverages from secret locations.[7] They did not leave forwarding contact information for SMBC, SF Holdings' landlord, or its other creditors. (Minahan Dec. ¶¶ 11-12; Exh. A at ¶ 24) Indeed, they have for some time been engaged in an effort to steal SF Holdings and its business entirely and to use some claim of right derived from that company to justify their pirating operation.

Mr. Plunkett's entanglement in schemes to take over SF Holdings' business and/or sell Simply Fit beverages without authorization puts him in a uniquely bad position to represent SF Holdings in this derivative action. Because he is involved in those endeavors his interests are not the same as those of other SF Holdings' securities owners. That is particularly the case because Mr. Plunkett can use this action to pressure the defendants to allow him to steal the Simply Fit franchise for himself. Indeed, the evidence suggests that he brought this action as a collusive anticipatory lawsuit to pressure the defendants to allow him to steal SF Holdings' business.

---

[6] Id. and Exh. F at June 16 entry; Rosenberg Dec. Exh. J at pp. 164-65, 174, 188-90, 201-04, and Exhs. M, O, and P.

[7] Minahan Dec. ¶¶ 9-11; Exh. A at ¶¶ 21-26 and Exhs. F, G, H, and I; Rosenberg Dec. Exh. J at 240-42 (referring to Rosenberg Exh. T), Rosenberg Exhs. R through V.

## CONCLUSION

For the foregoing reasons, this action should be dismissed.

Dated: August 29, 2008

                              ALTMAN & COMPANY P.C.

                        By:   _____
                              Steven Altman

                              260 Madison Avenue
                              22nd Floor
                              New York, New York 10016
                              (212) 683-7600

                              Attorneys pro se

13

**DECLARATION OF SERVICE**

Eric Rosenberg hereby declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

I am an attorney licensed to practice law in the State of New York. I am not a party to this action, am over 18 years of age, and reside in the State of New York. On this day, September 2, 2008, I served copies of the attached memorandum of law and accompanying declarations of Daniel Minahan and Eric Rosenberg with exhibits by mailing them to the following counsel by First Class U.S. Mail:

Gary A. Woodfield
Edwards Angell Palmer & Dodge, LLP
One North Clematis Street
Suite 400
West Palm Beach, Florida 33401
Attorneys for Michael Plunkett

Valorie S. Chavin
Michael L. Feinstein, PA
888 East Olas Boulevard
Suite 700
Fort Lauderdale, Florida 33301
(954) 767-9662
Attorneys for Carl Feldman

Robert Cox
16 Woodhollow Lane
Fort Salonga, New York 11768

Smitten Press: Local Lore and Legend, Inc.
c/o Corporate Office Services, Inc.
Registered Agent
2533 North Carson Street
Suite 125
Carson City, Nevada 89706

Howard Kahn
Kahn, Chenkin & Resnik, PL
1815 Griffin Road
Suite 207
Dania, Florida 33004
(954) 321-0176
Attorneys for defendants Cort Poyner
Daniel Minahan, DP Minahan, Inc.,
Silverman & Minahan Beverage
Company, LLC, The Silverman &
Minahan Group, LLC, and Mazel Tuff, LLC,

_____
ERIC ROSENBERG